**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**at LEXINGTON**

**Civil Action No. 14-359-HRW**

**STEVEN D. WHITING, PLAINTIFF,**

v. **MEMORANDUM OPINION AND ORDER**

**CAROLYN COLVIN,**
**COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.**

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits . The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his current application for disability insurance benefits on April 5, 2011, alleging disability beginning on February 9, 2011, due to tremors, problems with concentration and lower back pain (Tr. 33). This application was denied initially and on reconsideration. Thereafter, upon request by Plaintiff, an administrative hearing was conducted by Administrative Law Judge Greg Holsclaw (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At the hearing, Betty Hale, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 29).

The ALJ then determined, at Step 2, that Plaintiff suffers from tremors of non-specific etiology, history of low back injury with pain and depression, which he found to be "severe" within the meaning of the Regulations (Tr. 29).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 30-32). .

The ALJ further found that Plaintiff could not return to his past relevant work, which is classified as medium to heavy, unskilled to skilled work (Tr. 37) but determined that he has the residual functional capacity ("RFC") to perform a range of light work, with certain restrictions as set forth in the hearing decision (Tr. 32).

The ALJ finally concluded that these jobs exist in significant numbers in the national and

regional economies, as identified by the VE (Tr. 37).

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner . Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Docket Nos. 14 and 15]. Plaintiff has also filed a Motion for Remand [Docket No. 16].

## II. ANALYSIS

### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th

Cir.1997).

**B. Plaintiff's Contentions on Appeal**

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ improperly discounted the opinion of his treating physician, Dr. Charles Griffith III and (2) the ALJ improperly relied upon the report of the examining psychologist, Amy Gonshank, Ph.D. Plaintiff also seeks remand pursuant to Sentence six of 42 U.S.C. §405(g).

**C. Analysis of Contentions on Appeal**

Plaintiff's first claim of error is that the ALJ improperly discounted the opinion of his treating physician, Dr. Charles Griffith III.

In order to be given controlling weight, the opinions of a treating source on issues involving the nature and severity of a claimant's impairments must be well supported by medically acceptable clinical and laboratory diagnostic techniques, and be consistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). The Court is mindful of the fact that the Commissioner is not bound by a treating physician's opinion. Such opinions receive great weight only if they are supported by sufficient medical data. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

In August 2012, Dr. Griffith wrote that he was unable to diagnose a specific condition, but that Plaintiff had a "continual tremor" throughout his body (Tr. 585). He wrote that Plaintiff was "disabled," having difficulty walking or performing many tasks. Yet, during the time he was being treated by Dr. Griffith, Plaintiff "repeatedly" refused medications during the relevant time (Tr. 36; *see also* Tr. 348, 464, 605 (underlying treatment notes)). Plaintiff even became belligerent and threatening to a physician who suggested medication, asserting that he was "intolerant" of "all"

medication whatsoever (Tr. 464-65). Although he described having a reaction to two medications in the past (Celexa and Lisinopril) (Tr. 369), there did not appear to be any evidence substantiating Plaintiff's claim that he was intolerant of all medication. These facts undermine Dr. Griffith's findings.

In addition, the ALJ cited to other evidence in the record, which called into question the extent of Plaintiff's tremors (Tr. 36). Plaintiff admitted to using his hands for coordinated movement, such as e-mailing or loading a dishwasher (*e.g.*, Tr. 239 ). Plaintiff also said that he could control his tremors by drinking one to two beers a day (Tr. 369). Finally, a physician observed that Plaintiff's tremors diminished in intensity when he was distracted (Tr. 370). This evidence could reasonably be seen as calling Dr. Griffith's opinions into question.

As for Dr. Griffith's opinion that Plaintiff is "disabled" (Tr. 585), the ALJ was correct in disregarding it. It is within the province of the ALJ to make the legal determination of disability. The ALJ is not bound by a treating physician's conclusory statement, particularly where the ALJ determines, as she did in this case, where these is medical proof that Plaintiff retains the RFC to work in some capacity other than her past work. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Plaintiff's second claim of error is that the ALJ improperly relied upon the report of the examining psychologist, Amy Gonshank, Ph.D.

After Plaintiff applied for disability, he was sent to a psychological examination with Dr. Gonshank.[1] Plaintiff told Dr. Gonshank that he began to suffer from confusion and memory problems after his workplace injury (Tr. 333). Dr. Gonshank then administered several tests but the data showed "poor effort" on Plaintiff's part (Tr. 336). Although Dr. Gonshank did not conclude that Plaintiff was intentionally feigning his symptoms, she explained that his actual mental functioning

was "no worse and most likely better than the data suggests" (Tr. 336). Dr. Gonshank gave the diagnosis of depression "with caution"and gave a Global Assessment of Functioning (GAF) score of 51, indicating moderate symptoms or limitations (Tr. 336,338).

With regard to Doctor Gonshank's report, Plaintiff argues, first that Dr. Gonshank conceded her findings were invalid, so the ALJ could not rely on them, but also, that Dr. Gonshank's GAF score of 51 would render him disabled.

Although Plaintiff's poor effort created some uncertainty in Doctor Gonshank's report, she did not observe any mental limitations that undermined the ALJ's findings. Indeed, her observation of "poor effort" is is particularly compelling when at least two of Plaintiff's treating physicians questioned his behavior (Tr. 332 (Plaintiff's claims were "implausible"), 370 (Plaintiff "embellishes")).

With regard to the GAF score, the Court is mindful that the ALJ is not bound by these scores. *See Keeler v. Comm'r of Soc. Sec.*, No. 12-1655, 2013 WL 133557, at *1 (6th Cir. Jan. 11, 2013) ("Further, the ALJ was not required to consider Keeler's GAF scores, and, in any case, the scores [50 and 52] were not sufficient to undermine the ALJ's analysis") (citations omitted); *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006) ("Any failure to reference Global Assessment Functioning scores or to compare different scores attributed to the same subject, without more, does not require reversal.").

Finally, Plaintiff argues that remand is warranted.

Sentence six of 42 U.S.C. §405(g) provides:

> The court . . . may at any time order additional evidence be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. §405(g). However, the limited circumstances under which remands are permitted arise when the party seeking remand shows that: (1) there is new, non-cumulative evidence: (2) the evidence is "material" - i.e., both relevant and probative, so that there is a reasonable possibility that it would change the administrative result; and, (3) there is good cause for failure to submit the evidence at the administrative level. *Willis v. Secretary of Health and Human Services*, 727 F.2d 551, 554 (6th. Cir. 1984). While it is not, generally, difficult for a party seeking remand to show that evidence is new, it is, generally, onerous to demonstrate that the new evidence is material.

Plaintiff urges remand upon two grounds - alleged discrepancies in the transcript of the Administrative hearing and for evidence that he had an allergic reaction to a common beta-blocker medication, Popranolol.

First, Plaintiff states that his recording of the Administrative hearing is more accurate than that of the court reporter. The question and answer to which Plaintiff refers, at pages 110 to 111 of the current administrative record, was the vocational expert's answer to an additional limitation of being off task 20% of the workday (Tr. 110-11). The ALJ did not, ultimately, include this limitation in the residual functional capacity (Tr. 32). However, The record already contains the ALJ's hypothetical, matching the later residual functional capacity finding, and the vocational expert's answer to that question, identifying various occupations (Tr. 109-110). Therefore, the allegedly superior transcript is not "material" as contemplated by Sentence Six.

Plaintiff also argues that he sent medical records to the Appeals Council after the ALJ's decision, which should be part of the record before the Court. Plaintiff asserts that these records showed he had a reaction to a beta-blocker medication, Popranolol. Although it is unclear from his

brief, Plaintiff seems to imply that his allergic reaction to one medication after the ALJ's decision that he was "intolerant" to "all" medications as he insisted to his treating doctors (Tr. 464). Yet, Plaintiff neglects to explain how this evidence, if considered by the ALJ, would change the ALJ's decision. "Good cause" under Sentence Six is more than a desire to relitigate the same issues.

## III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motions for Summary Judgment and Remand [Docket Nos. 14 and 16] be **OVERRULED** and the Defendant's Motion for Summary Judgment [Docket No. 15] be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 28th day of September, 2015.

Signed By:
*Henry R. Wilhoit, Jr.*
**United States District Judge**